UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

MARSHALL JACKSON,                           )
                                            )
                    Plaintiff,              )
                                            )
            vs.                             )   No. 1:16-cv-02732-WTL-MJD
                                            )
BRUCE LEMMON Commissioner,                  )
DOC SCOTT BRENNEKE,                         )
DEPARTMENT RECORD COORDINATOR               )
individual and official capacities,         )
                                            )
                    Defendants.             )

**Entry Granting Defendants' Motion to Dismiss and Directing Entry of Final Judgment**

The second amended complaint alleges that the defendants violated plaintiff Marshall Jackson's First Amendment Rights and state law by failing to timely produce his medical records when he requested them. The theory of liability is that information contained in the medical records was necessary to file a viable product liability action against AstraZeneca, a third-party. The Commissioner of the Indiana Department of Correction (DOC), Bruce Lemmon, and the Department Record Coordinator, Scott Brenneke, seek dismissal of the complaint for failure to state a claim upon which relief may be granted. For the reasons explained below, the defendants' motion to dismiss, Dkt. No. 60, is **granted.**

### I. Standard of Review

When evaluating a motion to dismiss the court "takes all well-pleaded allegations of the complaint as true and views them in the light most favorable to the plaintiff." *Santiago v. Walls,* 599 F.3d 749, 756 (7th Cir. 2010). Any legal conclusions pressed in the complaint are not

1

presumed to be true. *See Bonte v. U.S. Bank, N.A.,* 624 F.3d 461, 465 (7th Cir. 2010). In addition, orders entered and filings made in this and other courts are subject to judicial notice on a Rule 12(b)(6) motion. *See Wigod v. Wells Fargo Bank,* 673 F.3d 547, 556 (7th Cir. 2012) (collecting cases). To satisfy the notice-pleading standard of Rule 8 of the *Federal Rules of Civil Procedure*, a complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief," which is sufficient to provide the defendant with "fair notice" of the claim and its basis. *Erickson v. Pardus,* 551 U.S. 89, 93 (2007) (*per curiam*) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) and quoting Fed. R. Civ. P. 8(a)(2)). Moreover, a plaintiff can plead himself out of court by pleading facts that show he has no legal claim. *Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011).

## II. Factual Background

Jackson filed this lawsuit on October 11, 2016, alleging that the defendants' failure to timely produce his medical records violated his First Amendment Rights. Jackson was not incarcerated during this time period and this is not a case where there was an actual barrier to filing a lawsuit.[1]

---

[1] This fact is worth highlighting to resist the temptation to treat this action like a claim brought by a prisoner alleging the denial of access to court as a result of their incarceration. In *Bounds v. Smith*, 430 U.S. 817 (1977), the Supreme Court held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Id.* at 828. No such duty has been identified as applying to non-prisoners. Nor are product liability actions the sort of cases the Court in *Bounds* had in mind. The Supreme Court clarified in *Lewis v. Casey*, that "*Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply

2

On June 14, 2017, Jackson filed a motion for leave to file an amended complaint. That request was granted. *See* Dkt. No. 49. In addition, Jackson was given a further opportunity to supplement his complaint with a factual basis for his conclusion that he was denied access to the courts (or in his words, "the courthouse doors are closed to the claim"). The supplement was filed on July 17, 2017. In response, the defendants filed a motion to dismiss. Jackson responded and the defendants replied. In addition, Jackson filed a motion to clarify statute of limitations[2] and motion for the court to take judicial notice of related adjudicative facts. *See* Dkt. Nos. 68 and 71. These briefs were all considered in ruling on the motion to dismiss.

The allegations and facts in Jackson's amended complaint, Dkt. No. 50, (as supplemented, Dkt. No. 57) are the following.

On October 1, 2012, Jackson was released from the DOC. While incarcerated Jackson was not told that he had kidney disease and never had a biopsy done. At some point, Jackson learned that he has kidney disease. He alleges that his kidney disease is a result of ingesting Prilosec, a Proton Pump Inhibitor (PPI) that had been prescribed by a prison doctor, to treat his acid reflux disease.

There are no allegations regarding when Jackson was prescribed Prilosec or when he was diagnosed with kidney disease.

---

one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Lewis v. Casey*, 518 U.S. 343, 355 (1996).

[2] The underlying product liability action is based on Jackson's consumption of Prilosec between 1988 through 1993. Based on this fact, the statute of limitations may or may not be a barrier to Jackson's product liability claim. This issue was highlighted in the Entry of June 23, 2017. While interesting, the dismissal of this action is not based on the statute of limitations, an affirmative defense.

Jackson alleges that, "towards the end of sometime in 2016, the plaintiff discovered that he had a claim against AstraZeneca." Dkt. No. 50 at ¶ 5. AstraZeneca Pharmaceuticals LP is the company that allegedly manufactures Prilosec. Jackson alleges that in 2014 warning labels were added to Prilosec and that Prilosec is liable to him for failing to adequately warn against the negative effects and risks associated with ingesting this medication.

On May 12, 2016, Jackson submitted a request to the DOC Central Office for medical records in its possession. Specifically, Jackson sought a copy of medical records for the time period 1988 through 1993.

On July 7, 2016, a DOC attorney informed Jackson that the requested medical records could not be produced. Similarly, a record department employee told Jackson that the records could not be located and were unavailable.

On October 11, 2016, Jackson commenced this action alleging that the defendants obstructed and deprived Jackson of his constitutional right to access the court.

On March 29, 2017, the DOC recovered Jackson's medical records during an extensive warehouse inventory. On or about March 30, 2017, Jackson was notified that the medical records were located. Jackson agreed to accept a copy of his medical records following a telephonic status conference on April 28, 2017.[3]

---

[3] This was wise, because Jackson necessarily needed these medical records to prosecute both his denial of access to court claim and the underlying product liability action. For if the medical records did not include information necessary to these claims there could be no injury based on the defendants' failure to timely produce them.

On May 10, 2017, Jackson received the requested medical records. Upon review Jackson determined that the medical records did not include the factual basis needed set forth a claim against AstraZeneca consistent with Rule 8 of the Federal Rules of Civil Procedure. *See* Dkt. No. 57 at p. 2.

Jackson alleges that AstraZeneca has accepted responsibility for failing to warn consumers about the dangers of their product to kidneys. Jackson asserts that Prilosec has damaged one of his kidneys. He is on dialysis treatment three (3) times a week and is being evaluated for a kidney transplant.

Jackson alleges that the defendants are the individuals responsible for the records retention program, policy, and practices for the DOC. Jackson alleges that they are individually liable for the ten-month delay (apparently caused by a computer crash in 2012) between the time Jackson requested his medical records and the time they were delivered to him. Jackson alleges that the defendants approved the flawed computer program system and did nothing to correct it.

### III. Discussion

Jackson's theory of liability is that because of the defendants' mismanagement or sinister motives, the DOC's computer system designed to support its medical record retention program crashed. As a result, Jackson could not retrieve his medical records for ten months. During this time he allegedly lost his opportunity to file a product liability action against AstraZeneca. Jackson asserts that these circumstances violated his First Amendment right to access the courts.

Jackson states that the fact that he now has the medical records makes no difference. He claims that the withholding, hiding, and concealment of his medical records obstructed his

5

meaningful access to the court and resulted in a lost opportunity to obtain a settlement against AstraZeneca.

**A. Access to Court Claims**

The First Amendment provides, in relevant part, that "Congress shall make no law ... abridging ... the right of the people ... to petition the Government for a redress of grievances." "'[T]he right of access to courts for redress of wrongs is an aspect of the First Amendment right to petition the government.'" *Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379, 387 (2011) (quoting *Sure–Tan, Inc. v. NLRB,* 467 U.S. 883, 896–897 (1984)). The United States Supreme Court has "recognized this right to petition as one of 'the most precious of the liberties safeguarded by the Bill of Rights.'" *BE & K Const. Co. v. N.L.R.B.*, 536 U.S. 516, 524–25 (2002) (quoting *Mine Workers v. Illinois Bar Assn.,* 389 U.S. 217, 222 (1967)). However, the text of the First Amendment does not speak in terms of successful petitioning—it speaks simply of "the right of the people ... to petition the Government for a redress of grievances." *BE & K Const. Co. v. N.L.R.B.*, 536 U.S. 516, 532 (2002). The Supreme Court noted that even unsuccessful but reasonably based suits advance some First Amendment interests by allowing "public airing of disputed facts" and raising matters of public concern. *Id.*

The Seventh Circuit has held that interference with the right of court access by state agents who intentionally conceal the true facts about a crime may be actionable as a deprivation of constitutional rights under 42 U.S.C. § 1983. *Rossi v. City of Chicago*, 790 F.3d 729, 734 (7th Cir. 2015) (holding that Rossi was not denied judicial access because he knew all of the relevant facts of his case and was free to pursue legal redress at all times.).

But the right to access the court is not absolute. The Supreme Court has held that the Constitution does not protect a person's right to file frivolous lawsuits. *Eichwedel v. Chandler*, 696 F.3d 660, 673–74 (7th Cir. 2012) (citing *Bill Johnson's Rests. v. N.L.R.B.*, 461 U.S. 731, 743, (1983) ("[B]aseless litigation is not immunized by the First Amendment right to petition."); *see also Lewis v. Casey,* 518 U.S. 343, 353 n. 3 (1996) ("Depriving someone of a frivolous claim[] ... deprives him of nothing at all, except perhaps the punishment of Federal Rule of Civil Procedure 11 sanctions.").

Denial of access to courts cases have traditionally fallen into two categories. The Supreme Court has explained:

> In the first are claims that systemic official action frustrates a plaintiff or plaintiff class in preparing and filing suits at the present time. . . . [T]he essence of the access claim is that official action is presently denying an opportunity to litigate for a class of potential plaintiffs. The opportunity has not been lost for all time, however, but only in the short term; the object of the denial-of-access suit, and the justification for recognizing that claim, is to place the plaintiff in a position to pursue a separate claim for relief once the frustrating condition has been removed.
>
> The second category covers claims not in aid of a class of suits yet to be litigated, but of specific cases that cannot now be tried (or tried with all material evidence), no matter what official action may be in the future. The official acts claimed to have denied access may allegedly have caused the loss or inadequate settlement of a meritorious case, *e.g., Foster v. Lake Jackson,* 28 F.3d 425, 429 (C.A.5 1994); *Bell v. Milwaukee,* 746 F.2d 1205, 1261 (C.A.7 1984) ("[T]he cover-up and resistance of the investigating police officers rendered hollow [the plaintiff's] right to seek redress"), the loss of an opportunity to sue, *e.g., Swekel v. River Rouge,* 119 F.3d 1259, 1261 (C.A.6 1997) (police cover up extended throughout "time to file suit ... under ... statute of limitations"), or the loss of an opportunity to seek some particular order of relief. . . . The ultimate object of these sorts of access claims, then, is not the judgment in a further lawsuit, but simply the judgment in the access claim itself, in providing relief obtainable in no other suit in the future.

*Christopher v. Harbury*, 536 U.S. 403, 413-414 (2002) (footnote omitted). "The very point of recognizing any access claim is to provide some effective vindication for a separate and distinct

right to seek judicial relief for some wrong." *Id.* at 414–415. The constitutional right of access to courts rests on the recognition that the right is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court. *Id.* at 415.

Accordingly, "the underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation. It follows, too, that when the access claim (like this one) looks backward, the complaint must identify a remedy that may be awarded as recompense but not otherwise available in some suit that may yet be brought. There is, after all, no point in spending time and money to establish the facts constituting denial of access when a plaintiff would end up just as well off after litigating a simpler case without the denial-of-access element." *Id.* at 415.

"The underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 416. The district court must take "care in requiring that the predicate claim be described well enough to apply the 'nonfrivolous' test and to show that the 'arguable' nature of the underlying claim is more than hope. And because these backward-looking cases are brought to get relief unobtainable in other suits, the remedy sought must itself be identified to hedge against the risk that an access claim be tried all the way through, only to find that the court can award no remedy that the plaintiff could not have been awarded on a presently existing claim." *Id.* at 416 (footnote omitted).

> [T]he right of a defendant in a backward-looking access suit to obtain early dismissal of a hopelessly incomplete claim for relief coincides in this case with the obligation of the Judicial Branch to avoid deciding constitutional issues needlessly. For the sake of each, the complaint should state the underlying claim in accordance with Federal Rule of Civil Procedure 8(a), just as if it were being independently pursued, and a like plain statement should describe any remedy available under the access claim and presently unique to it.

*Id.* at 417–18 (footnote omitted).

**B. Analysis**

At the outset, it is worth noting that Jackson does not have a constitutional right to have the DOC maintain his medical records indefinitely and to provide him with a copy on demand. The fact that the DOC was unable to timely produce Jackson's medical records is unfortunate but not a constitutional violation. *See e.g., Rossi v. City of Chicago*, 790 F.3d 729, 735 (7th Cir. 2015) (stating "the operative question is not whether Rossi's case would have been better had the police conducted a worthy investigation, but whether their failure to do so limited his ability to obtain legal redress to such degree that it constituted a denial of judicial access."); *DeShaney v. Winnebago County Department of Social Services,* 489 U.S. 189, 196 (1989) (holding that the Constitution "generally confer[s] no affirmative right to governmental aid, even where such aid may be necessary secure life, liberty, or property interests of which the government itself may not deprive the individual.").

Instead, the claim is that the failure to timely produce Jackson's medical records resulted in the lost opportunity to file and successfully settle a product liability claim against AstraZeneca. Employing the language of *Christopher* this is a backward looking access to court claim because he is seeking redress for "specific litigation" that allegedly "could not have commenced." *Christopher*, 536 U.S. at 414. The Seventh Circuit has summarized:

> Consistently with general pleading rules under the Federal Rules of Civil Procedure, *Christopher* requires something sufficient to give the defendant "fair notice" of the access claim, including the identification of the underlying claim that was lost; a description of the "official acts frustrating the litigation"; and the identification of a "remedy that may be awarded as recompense but not otherwise available in some suit that may yet be brought.

*Steidl v. Fermon*, 494 F.3d 623, 633 (7th Cir. 2007) (quoting *Christopher*, 536 U.S. at 415–16).

In this case, Jackson's claim must be dismissed because he has failed to provide any plausible basis to conclude that he was not able to file a timely product liability claim against AstraZeneca as a result of the defendants' actions. Jackson asserts that the medical records would have provided him with the date of the diagnosis of the disease, date of Prilosec prescription, name of the doctor who prescribed the drug and recorded the length of the use of the drug. Jackson asserts that this information is necessary to file a claim in any court. He is mistaken as to both of these assertions.

First, because Jackson alleges that he was not diagnosed with kidney disease until after he was released from prison, the date of that diagnosis would not have been in his DOC medical records. Further, Jackson is mistaken in his belief that he was required to include the date of his Prilosec prescription, the name of the prescribing physician, and the length of time he was provided the drug in any complaint. As Senior Judge Ortrie D. Smith of the District Court in the Western District of Missouri recently held in a similar product liability action:

> Plaintiff need not identify the specific instances in which he consumed a medication manufactured and sold by a Defendant. Nor is Plaintiff required to differentiate between the cause and effect of one medication manufactured by AstraZenca as compared to another medication manufactured by a different Defendant. Furthermore, Plaintiff need not prove causation. Plaintiff's Amended Complaint adequately sets forth factual information regarding his consumption of these drugs and plausibly suggests Plaintiff's injuries were caused by one or more Defendants.

*ISAAC RATSHIDAHO, Plaintiff, v. ASTRAZENECA PHARMACEUTICALS, LP, et al., Defendants. Additional Party Names: AstraZeneca LP*, No. 16-03417-CV-S-ODS, 2017 WL 1095070, at *2 (W.D. Mo. Mar. 22, 2017) (denying AstraZeneca's motion to dismiss product liability action).

Instead of suing the defendants, Jackson should have filed his product liability action as soon as he knew he had a claim against AstraZeneca based on his use of Prilosec at some point between 1988 and 1993. The amended complaint alleges that Jackson learned he had a claim at the end of 2016, while his more recent filing states that he was informed that he had a kidney disease in November 2014 and that the cause of action against AstraZeneca was discovered on February 6, 2015. Dkt. No. 71. Either way, the denial of his DOC medical records did not prohibit him from filing a product liability action.

Notably, Jackson has not included any facts related to the product liability action that he has in his possession now, but that he did not have in 2016 when he alleges that he knew he had a claim against AstraZeneca. See *Rossi*, 790 F.3d at 736 (dismissing action where plaintiff knew the relevant facts of his case and was free to pursue legal redress); *Edmonson v. Fremgen*, 590 F. App'x 613, 616 (7th Cir. 2014) (dismissing action for failure to state a claim at screening because plaintiff did not describe any potentially meritorious underlying claims that he was unable to pursue).

In an unexpected twist, Jackson now asserts that after he received the requested medical records on May 10, 2017, he determined that the medical records did not include the information he needed to set forth a claim against AstraZeneca consistent with Rule 8 of the Federal Rules of Civil Procedure. Dkt. No. 57 at p. 2. He alleges that he needs additional discovery to file a viable complaint because he cannot remember the medications he took between 1988 and 1993. Dkt. No. 57 at p. 3. The record reflects that Jackson's offender packet (including medical records) was found and delivered to Jackson. See Dkt, No. 21. Jackson's requests for additional discovery related to the DOC's record retention policy are irrelevant to his product liability claim.

11

Jackson's argument that "the Courthouse Doors remain closed, even with the medical records because of the unavailability of the evidence to support the claim," is insufficient to save his First Amendment claim. Dkt. No. 50 at ¶ 21. The medical records Jackson sought from the defendants have been produced. It is not the defendant's fault if these materials are insufficient to prevail in a product liability action. In any event, the better forum to seek discovery in support of a product liability action, would be through a third party subpoena in the product liability case itself.

It is possible that the defendants' alleged failure to properly maintain an adequate record retention policy violated state law. This failure, however, is not sufficient to state a viable claim for relief under the First Amendment. To hold otherwise would mean that any state actor could be liable under the First Amendment when they fail to produce what should be considered discovery materials.

The supplemented amended complaint is dismissed because there is no plausible basis to conclude that Jackson was not able to file a timely product liability claim against AstraZeneca as a result of the defendant's actions.

## IV. Conclusion

For the reasons explained above, the Amended Complaint is **dismissed** for failure to state a claim upon which relief could be granted. Jackson has been given ample opportunity to explain his claim. He was given the opportunity to amend and to supplement the amended complaint. Under these circumstances, dismissal of his federal claims with prejudice and without an opportunity to amend is warranted. *See Agnew v. NCAA*, 683 F.3d 328, 347 (7th Cir. 2012).

Because the federal claim fails to state a claim upon which relief may be granted, the plaintiff may not rely on the court's supplemental jurisdiction to entertain any state-law claims. See 42 U.S.C. § 1367(c)(3); *Hagans v. Lavine,* 415 U.S. 528, 536-37 (1974); *In re African-Am. Slave Descendants Litig.,* 471 F.3d 754,757-58 (7th Cir. 2006). Accordingly, any state law claims are dismissed without prejudice for lack of jurisdiction.

**IT IS SO ORDERED.**

Date: 10/18/17

_____

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Distribution:

MARSHALL JACKSON
827 Country Lane
Anderson, IN 46013

All Electronically Registered Counsel